UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Mark Anthony Hamilton,

        Petitioner,

  vs.                   REPORT AND RECOMMENDATION

Warden Roehrich,

            Respondent.     Civ. No. 08-2500 (PAM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, under Title 28 U.S.C. §2254.

The Petitioner Mark Anthony Hamilton ("Hamilton"), appears pro se, and the Respondent appears by Michael K. Walz, Assistant Hennepin County Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied.

## II.  Factual and Procedural Background

Hamilton is a State prisoner, who is currently serving a ninety-eight (98) month sentence, at the Minnesota Correctional Facility, in Faribault, Minnesota.   The sentence resulted from Hamilton's conviction, by a Jury, on March 23, 2006, in Hennepin County District Court, on one (1) Count of First Degree Aggravated Robbery, one (1) Count of Second Degree Aggravated Robbery, one (1) Count of Second Degree Assault, one (1) Count of Terroristic Threats, and one (1) Count of Misdemeanor Theft.   See, State v. Hamilton, 2007 WL 3076995 at *1 (Minn. App., October 23, 2007), rev. denied (Minn., January 15, 2008).   The facts which led to Hamilton's conviction were aptly summarized by the Minnesota Court of Appeals as follows:

> In December 2005, Minneapolis police responded to a report of an assault and shoplifting incident at a Rainbow Foods store. The report identified appellant Mark Anthony Hamilton as a possible suspect. Police apprehended appellant and found a kitchen knife in his pocket.  Police interviewed Zavier Awoudi and his supervisor Michael Davenport, both of Rainbow's loss-prevention department. Awoudi alleged that appellant had attempted to steal merchandise from the store and, when confronted, bit Awoudi on the hand and threatened him with a knife. When police interviewed appellant he complained of a loose tooth and ear pain and, therefore, was transported to a hospital for treatment. Subsequently, appellant was charged with first-

and second-degree aggravated robbery, second-degree assault, theft, and terroristic threats.

At trial, the state presented testimony from Awoudi, Davenport, and two Minneapolis police officers who were involved in the investigation. Awoudi and Davenport testified that they observed appellant remove two bags of frozen shrimp from the store without paying for them. Awoudi then confronted appellant as he was leaving the store by asking if there was "anything you might of forg[otten] to purchase?" Appellant tried to run away, but Awoudi grabbed his coat, saying, "just drop the bag[s] of shrimp and you can go." Awoudi testified that appellant responded by biting his hand. When Awoudi extricated his hand, appellant threatened him with a knife and stated he was going to "f-ck him up." Davenport and another employee broke up the scuffle, and then Davenport called the police. Awoudi subsequently was treated at the hospital for the bite on his hand.

Id.

After a Jury Trial, Hamilton was convicted on all charges. Id. On April 17, 2006, Hamilton was sentenced to ninety-eight (98) months in prison for First Degree Aggravated Robbery. See, State v. Hamilton, supra at *1; Petition, Docket No. 1, at 1; Respondent's Memorandum, Docket No. 7, at 1.

After his conviction, Hamilton appealed to the Minnesota Court of Appeals, arguing that his alleged conduct did not meet the statutory elements, under Minnesota Statutes Section 609.245, Subdivision 1, for First Degree Aggravated Robbery, and

- 3 -

that the evidence, which was presented at his Trial, was insufficient to support his conviction. See, State v. Hamilton, supra at *1-2. In addition, Hamilton raised claims, in his pro se supplemental brief, which attacked the credibility of the prosecution's witness, and which raised issues that were not presented at his Trial, and he further alleged that he had not received the effective assistance of counsel. Id. at *3.

On October 23, 2007, the Minnesota Court of Appeals affirmed Hamilton's conviction. Id. at *1. The Court rejected Hamilton's first four (4) claims on their merits. Id. at *1-3. With respect to his claim of ineffective assistance of counsel, Hamilton had advanced two (2) arguments: first, that his counsel failed to subpoena a witness who saw Hamilton shortly after his altercation at the Rainbow Foods store; and second, that his counsel failed to introduce photographs, which were taken shortly after Hamilton's arrest, and which showed his tooth and ear injuries. Id. at *4. The Court rejected Hamilton's claim, and noted that "[Hamilton's] criticisms of the trial tactics employed by his counsel are not proper grounds for an ineffective-assistance-of-counsel claim." Id. On January 15, 2008, the Minnesota Supreme Court denied Hamilton's Petition for review. See, Petition, supra at 2.

Some time later, Hamilton filed a Petition for Post-Conviction relief in Hennepin County District Court, in which he raised several new arguments in challenging his conviction.[1] Id. at 2-3. According to Hamilton, his Petition for Post Conviction relief alleged that exculpatory evidence was withheld, that witnesses had committed perjury, that improper racial comments had been made to the Jury, and that Hamilton was the actual victim, rather than the assailant. Id. at 3. On March 26, 2008, Hamilton's Petition for Post Conviction relief was denied.[2] Id.

On June 18, 2008, Hamilton filed his current Petition for Federal Habeas seeking relief under Section 2254. Hamilton raises the following five (5) grounds for relief:  1) that the prosecutor improperly spoke about race during her closing arguments; 2) that his constitutional rights were violated when the prosecutor disqualified a black juror; 3) that the prosecutor lacked the necessary Continuing Legal Education ("CLE") credits that are required for a licensed attorney in the State of Minnesota; 4) that he received the ineffective assistance of counsel, because his

---

[1]A copy of Hamilton's Petition for Post-Conviction Relief has not been provided for our review.

[2]As of June 16, 2008, the date when the current Petition appears to have been signed, Hamilton had not yet appealed the Trial Court's rulings on the Petition for Post-Conviction Relief.  See, Petition, supra at ¶11(c).

counsel failed to present photographs that assertedly depicted his post-arrest injuries for the Jury; and 5) that he received ineffective assistance of counsel because his counsel failed to have a medical expert testify at his Trial. See, <u>Petition</u>, supra at 5-6, 9-10; <u>Petitioner's Response</u>, <u>Docket No. 12-2</u>, at 5-6.

The Respondent opposes Hamilton's Petition on both procedural and substantive grounds, and we consider the parties' arguments in turn.

### III. <u>Discussion</u>

A.   <u>Standard of Review</u>.  "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." <u>Title 28 U.S.C. §2254(a)</u>.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).  As a result, before a Writ may issue, a petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty.  <u>Id.</u>; see also, <u>Lupien v. Clarke</u>, 403 F.3d 615, 619 (8th Cir. 2005); <u>Newton v. Kemna</u>, 354 F.3d 776, 782 (8th Cir. 2004), cert. denied, 543 U.S. 979 (2004); <u>Robinson v. Leapley</u>, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions where, as here, the underlying claims were adjudicated in State Court. See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

The Supreme Court has determined that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two (2) separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the State Courts. See, Williams v. Taylor, 529 U.S. 362 (2000).

The Court has explained, as follows:

- 7 -

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the "unreasonable application" clause, requires a Federal Court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409; see also, Underdahl v. Carlson, 462 F.3d 796, 798 (8th Cir. 2006); Davis v. Norris, 423 F.3d 868, 874-75 (8th Cir. 2005); LaFrank v. Rowley, 340 F.3d 685, 689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Davis v. Norris, supra at 875; Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir.

2001)(examining the impact of <u>Williams</u> on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); <u>Newman v. Hopkins</u>, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); <u>Copeland v. Washington</u>, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, <u>Williams</u> affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations.  See, e.g., <u>Evans v. Rogerson</u>, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for <u>Miranda</u> purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed).  Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.  "'[O]bjectively unreasonable' does not mean 'clear error,' because '[t]hese two standards * * * are not the same,'" and "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  <u>LaFrank v. Rowley</u>, supra at 689, quoting <u>Lockyer v. Andrade</u>, supra at 75.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations rendered by a State Tribunal, which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. See, Guinn v. Kemna, 489 F.3d 357, 359 (8th Cir. 2007); Lupien v. Clarke, supra at 618; Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005). Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997). Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" Kinder v. Bowersox, supra at 538, citing Title 28 U.S.C. §2254(e)(1).

   B.   Legal Analysis. As noted, Hamilton seeks Habeas relief on five (5) separate grounds, and the Respondent opposes his Petition on both substantive and procedural grounds. Procedurally, the Respondent asserts that Hamilton has defaulted

some of his claims, because he did not raise them in his direct appeal, and we turn to

consider that argument first.[3]

>    1.    Exhaustion and Procedural Default

>    a.    Standard of Review.  It is well-established that a Federal

Court will not entertain a Petition for a Writ of Habeas Corpus, on behalf of a State

prisoner, unless the prisoner has first exhausted all available State Court remedies.

See, Title 28 U.S.C. §2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999);

Rose v. Lundy, 455 U.S. 509 (1982); see also, Armstrong v. State of Iowa, 418 F.3d

924, 925-26 (8th Cir. 2005), cert. denied, 546 U.S. 1179 (2006)("Federal habeas relief

is available to a petitioner after he 'has exhausted the remedies available in the courts

of the State.'"), quoting Title 18 U.S.C. §2254(b)(1)(A).

The exhaustion of State remedies requirement is based upon principles of

comity and federalism, as its purpose is to ensure that State Courts are given the first

opportunity to correct alleged Federal constitutional errors that are raised by State

---

[3]We acknowledge that the Supreme Court has recently held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Dretke v. Haley, 541 U.S. 386, 393-94 (2004).  However, it is unnecessary for us to analyze Hamilton's defaulted claims last, because we conclude that none of his nondefaulted claims entitle him to Habeas relief.

prisoners.  See, <u>O'Sullivan v. Boerckel</u>, supra at 844; <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>Rose v. Lundy</u>, supra at 518-19; <u>Curtiss v. Mount Pleasant Correctional Facility</u>, 338 F.3d 851, 55 (8th Cir. 2003), cert. denied, 540 U.S. 1060 (2003)("The exhaustion requirement serves AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'"), quoting <u>Carey v. Saffold</u>, 536 U.S. 214, 220 (2002).

In order to exhaust his State Court remedies, a prisoner must fairly present his constitutional claims to the highest available State Court before seeking relief in Federal Court.  See, <u>O'Sullivan v. Boerckel</u>, supra at 845; <u>Duncan v. Henry</u>, supra at 365-66; see also, <u>Dixon v. Dormire</u>, 263 F.3d 774, 777 (8th Cir. 2001); <u>McCall v. Benson</u>, 114 F.3d 754, 757 (8th Cir. 1997)("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court.").  The exhaustion of State remedies requires more than the fact that the Federal Habeas applicant has been through the State Courts.  See, <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971). When a State has a two-tiered appellate review system, as does the State of Minnesota, a prisoner must exhaust both appellate levels before presenting his claims in Federal Court.  See,

O'Sullivan v. Boerkel, supra at 845.  This is true even when a State does not afford a "right" to review by its highest Court, but only offers an opportunity to present claims for discretionary review.  Id.

To serve the purposes of the Rule, the State Courts must have the first opportunity to hear the claim, which is sought to be vindicated in a Federal Habeas proceeding.  See, Picard v. Connor, supra 275-76.  The State Court has an opportunity to hear a claim, when the claim has been fairly presented, by reference to a specific Federal constitutional right, a Federal case, or a State case, which raises a pertinent Federal constitutional issue.  See, Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005), cert. denied, 546 U.S. 844 (2005), quoting Barrett v. Acevedo, 169 F.3d 1155, 1161-62 (8th Cir. 1999), cert. denied, 528 U.S. 846 (1999); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996).  Claims are exhausted only when the same factual underpinnings, and legal theories, were first properly raised in the State Courts.  Id.  "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement."  Id.; see also, Abdullah v. Groose, supra at 412, citing Duncan v. Henry, supra at 366.

Under Minnesota law, "[o]nce a defendant has had a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a

subsequent petition for post-conviction relief." Zenanko v. State, 587 N.W.2d 642, 644-45 (Minn. 1998), quoting State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976). If the petitioner has failed to exhaust his State Court remedies, and if the Court to which he should have presented his claim would now find it procedurally barred, the claim is procedurally defaulted.  See, Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996), citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991).  In addition, if a petitioner has attempted to raise a claim in State Court, but the State Court determines that the petitioner has defaulted the claim under a State procedural rule, Federal Courts will not, as a general proposition, consider the claim on Habeas review.  See, Coleman v. Thompson, supra at 750; Sloan v. Delo, supra at 1378.

Accordingly, "[a] default under a state procedural rule bars consideration of a federal claim presented to the state courts if the last state court to review the claim specifically rested its decision on an adequate and independent state ground * * *." Sloan v. Delo, supra at 1378, citing Harris v. Reed, 489 U.S. 255, 260-63 (1989).  A claim that is procedurally defaulted under State law, however, is barred from Federal review only if the State procedural rule is firmly established, and regularly followed. See, Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995), cert. denied, 517 U.S. 1124

(1996), citing <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991); see also, <u>Harris v. Reed</u>, supra at 262 ("[A]n adequate and independent finding of procedural default [as a matter of State law] will bar federal habeas review of the federal claim."). Although the State Court procedural bar is "nearly absolute," a petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows his actual innocence. <u>Reagan v. Norris</u>, 279 F.3d 651, 656 (8th Cir. 2002), quoting <u>Coleman v. Thompson</u>, supra at 750.

Furthermore, a Habeas Petitioner must exhaust his State Court remedies with respect to **all** of the claims that he wishes to raise in a Federal Habeas Petition. A "mixed petition" -- i.e., one that includes both exhausted and unexhausted claims -- will be dismissed for non-exhaustion, or stayed, under certain circumstances, to allow the exhaustion of State remedies. See, <u>Rose v. Lundy</u>, supra at 510, 522; see also, <u>Akins v. Kenney</u>, 410 F.3d 451, 456 (8th Cir. 2005)("In order to determine whether a stay pending exhaustion would be appropriate in this case, [petitioner] must be given an opportunity to demonstrate good cause for his failure to exhaust his claims first in state court, to show that his unexhausted claims are not 'plainly meritless,' and to demonstrate that he has not engaged in abusive litigation tactics or intentional delay."), citing <u>Rhines v. Weber</u>, 544 U.S. 269, 277 (2005).

However, our Court of Appeals has also concluded that, "if no state court remedy is available for the unexhausted claims -- that is, if resort to the state courts would be futile -- then the exhaustion requirement in §2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default' (or actual innocence, which is not at issue in this case)." <u>Armstrong v. State of Iowa</u>, supra at 926, quoting <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996). If a petitioner cannot provide cause and prejudice for his default, in the absence of a claim of actual innocence, then a Federal District Court can "properly dismiss[] [the petitioner's] federal claims <u>with</u> prejudice." <u>Id.</u>, supra at 927 [emphasis in original].

      b.   <u>Legal Analysis.</u>   In his direct appeal, Hamilton raised numerous grounds for relief, but he did not assert that the prosecutor improperly spoke about race during her closing arguments. However, in his Petition for Post-Conviction relief to the Hennepin County District Court, Hamilton alleged that "improper racial comments were made to the jury[.]" See, <u>Petition</u>, supra at ¶11(a)(3). According to Hamilton, the Hennepin County District Court denied his Petition for Post-Conviction

Relief.[4]  Id. at ¶11(a)(5).  With respect to Hamilton's claims, that the prosecutor improperly struck a black juror from the Jury pool, and that he received ineffective assistance because his counsel failed to call a medical expert, Hamilton failed to raise those claims in either his direct appeal, or his Petition for Post-Conviction relief.  See, Petition, supra at ¶11(a)(3), p. 10; Petitioner's Response, at 4-5.

As a result, those specific claims are now procedurally barred because he failed to bring them before the Minnesota Court of Appeals.  See, Minnesota Statutes Section 590.04, Subdivision 3 ("The court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner and may summarily deny a petition when the issues raised in it have previously been decided by the Court of Appeals or the Supreme Court in the same case."); Arrendo v. State, 754 N.W.2d 566, 570-71 n. 2 (Minn. 2008)(finding that failure to raise an inconsistent Verdict on direct appeal barred consideration in a post-conviction proceeding), citing State v. Knaffla, supra at 741; Gustafson v. State, 754 N.W.2d 343, 348 (Minn. 2008)("When a 'direct appeal has once been taken, all matters raised therein, and all

---

[4]The Respondent represents that the Court denied Hamilton's Petition for Post-Conviction relief on the basis of procedural default. See, Respondent's Memorandum, supra at 4.  However, on this Record, we are unable to ascertain the basis for the Court's decision.

claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'"), quoting  State v. Knaffla, supra at 741.

Since those claims are procedurally barred under Minnesota law,  Hamilton has no remedy for his unexhausted claims.  As a result, any resort to the State Courts would be futile, and therefore, Hamilton has fulfilled the exhaustion requirement of Section 2254(b).  See, Armstrong v. Iowa, supra at 926; Ramos v. Fabian, 2003 WL 22999545 at *2 (D. Minn., December 18, 2003)("While a federal court typically will not hear unexhausted claims, a petitioner can satisfy the exhaustion requirement if his claims are procedurally barred under state law, because the exhaustion requirement refers only to state remedies still available when the federal petition is filed."), citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)(finding that the exhaustion requirement applies only to remedies that are still available at the time of the Petition, and that exhaustion is met if the claims are barred by a State procedural rule); Garza v. Fabian, 2007 WL 2571990 at *6 (D. Minn., August 31, 2007)("In effect, 'if a petitioner's unexhausted claims are procedurally barred under state law, the exhaustion requirement is satisfied because this requirement * * * refers only to remedies still available at the time of the federal petition.'"), quoting Copeland v.

Minnesota, 2004 WL 1701034 at *2 (D. Minn., July 29, 2004), quoting, in turn, Gray v. Netherland, supra at 161-62.

Although Hamilton has exhausted his State Court remedies, that same procedural bar "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default," or a fundamental miscarriage of justice. Wemark v. Iowa, 322 F.3d 1018, 1022 (8th Cir. 2003), citing Gray v. Netherland, supra at 162 [citations omitted]; see also, Armstrong v. State of Iowa, supra 926; Moore-El v. Luebbers, 446 F.3d 890, 896 (8th Cir. 2006)("Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted," but a defaulted claim will be considered if "the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.")[citations omitted], cert. denied, 549 U.S. 1059 (2006).

In order to satisfy the "cause" requirement, Hamilton must demonstrate that some external impediment prevented him from presenting his claim in a timely and procedurally proper manner. See, Bell v. Attorney General of State of Iowa, 474 F.3d 558, 561 (8th Cir. 2007)("A cause is sufficient to excuse procedural default when it is

external to the petitioner, and not attributable to the petitioner."), cert. denied, --- U.S.
---, 128 S.Ct. 261 (2007), citing Coleman v. Thompson, 501 U.S. 722, 753
(1991)("[C]ause under the cause and prejudice test must be something **external** to the
petitioner, something that cannot fairly be attributed to him * * * [f]or example, 'a
showing that the factual or legal basis for a claim was not reasonably available * * *
or that some interference by officials made compliance impracticable[.]'")[emphasis
in original], quoting, in turn, Murray v. Carrier, 477 U.S. 478, 488 (1986).

Here, Hamilton has failed to present any evidence to demonstrate that an
external impediment prevented him from presenting his claims to the Minnesota Court
of Appeals.  As a result, we conclude that Hamilton has not satisfied the "cause"
prong of the "cause and prejudice" standard so as to excuse his procedural default.[5]

---

[5]Since Hamilton has plainly failed to satisfy the cause requirement, it is
unnecessary to consider the prejudice component.  See, Cagle v. Norris, 474 F.3d
1090, 1099 (8th Cir. 2007)("If a prisoner fails to demonstrate cause, the court need not
address prejudice."), citing Mathenia v. Delo, 99 F.3d 1476, 1481 (8th Cir. 1996), cert.
denied sub. nom. Mathenia v. Bowersox, 521 U.S. 1123; Ashker v. Class, 152 F.3d
863, 871 (8th Cir. 1998)(when a Habeas petitioner "has not shown adequate cause to
overcome the procedural bar * * * we need not consider the issue of actual
prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S.
1010 (1998) (same).  Nevertheless, we find no reason to believe that Hamilton could
satisfy the prejudice requirement, so as to excuse his defaulted claims.

However, Hamilton asserts that he was the actual victim of the crime rather than the assailant.  See, <u>Petition</u>, supra at ¶¶9(d), 11(3), p. 11. Construing his Petition liberally, we understand Hamilton to argue that we should excuse his procedural default based upon the fundamental miscarriage of justice exception.   The "fundamental miscarriage of justice" exception is available only upon a "showing, based on **new evidence**, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995)[emphasis added], cert. denied, 516 U.S. 1161 (1996), quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995); see also, <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1350 (8th Cir. 1997)("To fit within the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence."),  cert. denied, 522 U.S. 1093 (1998), citing <u>Schlup v. Delo</u>, supra at 321.

Our Court of Appeals has explained that "[t]he actual innocence exception is concerned with claims of actual, not legal innocence," and "it is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception." <u>Pitts v. Norris</u>, 85 F.3d 348, 350 (8th Cir. 1996), cert. denied, 519 U.S. 972 (1996), citing <u>Anderson v. United States</u>, 25 F.3d 704, 707 (8th Cir. 1994). "Examples of evidence which may establish factual innocence include credible

declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." Id. at 350-51, citing Schlup v. Delo, supra at 324 and Sawyer v. Whitley, 505 U.S. 333, 340 (1992).

"An actual innocence claim is 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" Wadlington v. United States, 428 F.3d 779, 783 (8th Cir. 2005), cert. denied, 549 U.S. 1077 (2006), quoting Schlup v. Delo, supra at 315; Flanders v. Graves, 299 F.3d 974, 977 (8th Cir. 2002)("[T]he concept of actual innocence is used as a 'gateway,' that is, actual innocence, if it can be shown, opens the gate to consideration of constitutional claims on their merits, claims that would otherwise be procedurally barred."), cert. denied, 537 U.S. 1236 (2003); Cornell v. Nix, 119 F.3d 1329, 1334 (8th Cir. 1997)(noting that the actual innocence exception "is not a substantive claim in itself, but is a 'gateway' through which a petitioner must pass to obtain review of defaulted substantive claims.").

To establish a claim of actual innocence, a petitioner must meet a two (2) part test. "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence that was not presented at trial." Weeks v. Bowersox, supra at 1351, quoting Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied,

520 U.S. 1128 (1997).  "'[E]vidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 818 (8th Cir. 1999), quoting Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997), cert. denied, 523 U.S. 1123 (1998).  "Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Id.  As our Court of Appeals has noted "[f]ew petitions are 'within the narrow class of cases * * * implicating a fundamental miscarriage of justice.'"  Id., quoting Schlup v. Delo, supra at 314-15, quoting, in turn, McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Here, Hamilton has not offered any new, reliable evidence to support his claim of actual innocence.  Rather, in support of his claim, Hamilton has offered diagrams, medical terminology, and his discharge instructions, which were issued following his release from the hospital after his arrest.  However, because all of that evidence was readily available, or discoverable, at the time of Hamilton's Trial, we find that he has not disclosed any new evidence which would affirmatively prove that he was, in fact, the victim of the crime.  See, Morris v. Dormire, 217 F.3d 556, 559 (8th Cir. 2000) (finding that  "the evidence was not new since it was available at trial or could 'have been discovered earlier through the exercise of due diligence.'"), quoting Johnson v.

Norris, supra at 818; Wren v. Fabian, 2008 WL 49333950 at *3 n. 3 (D. Minn.,

November 14, 2008); Johnson v. United States Parole Comm'n, 2008 WL 227656 at

*2 n. 3 (D. Minn., January 28, 2008).   Accordingly, Hamilton has failed at the first

step, and we need not consider his claim further.[6]  See, Amrine v. Bowersox, 238 F.3d

1023, 1029 (8th Cir. 2001)(concluding that the petitioner's failure to produce new

---

[6]Even if we regarded Hamilton's evidence as new and reliable, we find that the "new" evidence would not change the Jury's Verdict.  To satisfy the second step of the test, the new evidence must be so forceful that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995); see also, Moore-El v. Luebbers, 446 F.3d 890, 902 (8th Cir. 2006); Osborne v. Puckett, 411 F.3d 911, 920 (8th Cir. 2005), cert. denied, 547 U.S. 1022 (2006).  Here, Hamilton's evidence simply confirms that there was an altercation between Hamilton, and the grocery store employees, which caused Hamilton physical injuries.  Both grocery store employees testified, at Trial, about the altercation, as well as to their subsequent efforts to subdue Hamilton.  See, State v. Hamilton, 2007 WL 3076995 at *1.

Moreover, Hamilton's evidence does not dispute the prosecution's evidence, that he had taken goods from the grocery store, or that he threatened the grocery store employees with physical force.  Id.  Considering all of the evidence, Hamilton's photographs would not have been sufficient to change a reasonable Juror's mind, much less overcome the testimony of the grocery store employees, and two (2) Minneapolis police officers.  See, Amrine v. Bowersox, 128 F.3d 1222, 1228 (8th Cir. 1997), cert. denied, 523 U.S. 1123 (1998) ("On a gateway claim of actual innocence, a federal court must consider all the evidence to make its own determination whether there is a sufficient showing to justify consideration of a petitioner's otherwise barred claims[.]"), citing Schlup v. Delo, supra at 326-330 and Battle v. Delo, 64 F.3d 347, 352 (8th Cir. 1995), cert. denied sub. nom., Battle v. Bowersox, 517 U.S. 1235 (1996); Buff v. Purkett, 2007 WL 16105508 at *15 (E.D. Mo., June 1, 2007); Neuendof v.Graves, 110 F. Supp.2d 1144, 1161 (N.D. Iowa 2000).

reliable evidence precluded him from utilizing the actual innocence gateway), cert. denied sub. nom., Amrine v. Luebbers, 534 U.S. 963 (2001); Weeks v. Bowersox, supra at 1352 ("Because Weeks has not presented new reliable evidence that he is actually innocent, he can not pass through the actual innocence gateway."); Thibodeau v. Carlson, 2007 WL 4372960 at *5 (D. Minn., December 6, 2007) (finding that, since the "Petitioner has not offered new evidence of actual innocence, his procedural default is not excusable."); see also, United States v. Siepker, 2008 WL 5273088 at *8 (N.D. Iowa, December 18, 2008)("The lack of any new evidence alone is enough to deny Siepker's claim when characterized as an actual innocence claim."), citing House v. Bell, 547 U.S. 518, 537-38 (2006).  Accordingly, since Hamilton has failed to establish his actual innocence, those specific claims have been procedurally defaulted, and we recommend that those claims be dismissed with prejudice.[7]

2. The Prosecutor's Restricted Law License.[8]

---

[7]As we subsequently detail, in the text of this Report, independent considerations require us to consider the merits of the defaulted claims which pertain to the conduct of Hamilton's prosecutor, Gemma Graham ("Graham"), during the course of his Trial, and therefore, our recommended disposition, on the basis of procedural default, does not obviate our need to examine the substance of certain of those claims.

[8]On the Record presented, we are unable to determine whether Hamilton (continued...)

a.      <u>Facial Due Process</u>.  In his Petition, Hamilton alleges that his constitutional rights were violated because the prosecutor, Gemma Graham ("Graham"), prosecuted him without the proper CLE credits.  See, <u>Petition</u>, supra at ¶12(c).  We disagree.

At the time of Hamilton's Trial, Graham's law license was on restricted status, because she failed to submit Affidavits, as required by Rules 5.5, and 8.4(d), Minnesota Rules of Professional Conduct, so as to confirm her compliance with the applicable CLE requirements.  See, <u>In re Disciplinary Action Against Graham</u>, 744 N.W.2d 19, 19 (Minn. 2008).  Although our Court of Appeals has not addressed that issue, we rely on the analysis of other Courts in analogous circumstances.

In <u>People v. Carter</u>, 77 N.Y.2d 95, 99 (N.Y. 1990), the defendants requested that their convictions be declared invalid, because the prosecutor was not licensed. The defendants argued that the appearance of a nonlawyer, before the Grand Jury, made such proceedings defective, and accordingly, the Indictments against them should have been dismissed.  <u>Id.</u> at 100, 103.  The Court rejected the defendants'

---

[8](...continued)
exhausted his State Court remedies concerning this claim, but the Respondent has not asserted an affirmative exhaustion defense as to the claim, and therefore, we consider the exhaustion defense as having been waived, and we proceed to address the merits of that claim.

argument, noting that the prosecutor's unlicensed status did not "undermine the underlying prosecutorial jurisdiction possessed by the Special Narcotics Prosecutor or affect his permission to be present before the Grand Jury as an Assistant District Attorney[.]" Id. at 105. [citations omitted].

The Court also rejected the defendants' argument, that their Due Process rights were violated, because they were prosecuted by someone other than a licensed attorney. Id. at 106-07. The Court noted that the question was not whether the defendants should have been prosecuted by a licensed attorney, but instead, was "whether the fact of defendants' prosecution by a nonlawyer, standing alone, has deprived them of protections guaranteed by the Federal and State Constitutions." Id. at 106. The Court noted that the defendants had offered no support for their constitutional right to be prosecuted by a licensed attorney, and concluded that, "in the absence of prejudice, the fact that [the prosecutor] was not a lawyer did not result in a deprivation of defendants' constitutional due process rights." Id. at 107.

Similarly, in Munoz v. Keane, 777 F. Supp. 282, 283-84 (S.D. N.Y. 1991), aff'd sub. nom., Linares v. Senkowski, 964 F.2d 1295 (2nd Cir. 1992), cert. denied, 506 U.S. 986 (1992), the petitioners challenged their convictions, on Fourteenth Amendment

Due Process grounds, because the prosecutor was not a licensed attorney.[9] Specifically, the petitioners argued that their Trial was not a fair legal proceeding because the prosecutor's actions were "'tainted by his unlawful conduct.'" Id. at 285. [citation omitted].   The Court noted that the petitioners had "formulated a new constitutional right - the right to be prosecuted by a licensed attorney." Id.   In rejecting the petitioners' claim, the Court explained that the prosecution, by an unlicensed attorney, did not violate the petitioners' Due Process rights because, "[w]hile it is obviously preferable that a prosecutor be licensed to practice law in the jurisdiction in which he or she practices, the fact that a prosecutor is not admitted does not necessarily undermine the fairness of the trial process." Id.

The Court recognized that the Court of Appeals for the Second Circuit had held that a criminal defendant must be represented by licensed counsel. Id.  However, it noted that,  "[w]hile a prosecutor is obligated to seek justice, not only a conviction, a criminal defendant does not rely on a prosecutor to protest his rights" and, "[a]s a result, the fact that a prosecutor may be unlicensed to practice law has far fewer

---

[9]The same prosecutor was involved in both People v. Carter, 77 N.Y.2d 95 (N.Y. 1990), and Munoz v. Keane, 777 F.Supp. 282 (S.D. N.Y. 1991), aff'd sub. nom., Linares v. Senkowski, 964 F.2d 1295 (2nd Cir. 1992), cert. denied, 506 U.S. 986 (1992).

repercussions for the defendant than if his own counsel is not admitted." Id. at 286. The Court rejected the petitioners' argument, that a per se Due Process violation occurred when a prosecutor was unlicensed because, "[w]here, as here, defense counsel and an impartial trial judge are capable of monitoring the prosecutor's conduct in order to ensure that no constitutional violations occur, it would be inappropriate to conclude that a due process violation automatically results from the prosecutor's unlicensed status." Id.

The Court was also concerned about the practical implications of the petitioners' claim, and noted that "the practical implications of accepting petitioners' due process claim * * * [would mean that] every defendant convicted by [the prosecutor] during his fourteen year tenure as a prosecutor would be entitled to a new trial." Id. The Court concluded that the petitioners had not demonstrated a sufficient basis for invalidating such a large number of cases, nor did they propose a means for limiting their proffered constitutional rule, and accordingly, the Court declined to adopt the petitioners' per se rule. Id.

Lastly, the Court recognized that, even if the petitioners had a constitutional right to be prosecuted by a licensed attorney, the petitioners' convictions would only be reversed "if petitioners c[ould] demonstrate that [the prosecutor's] conduct

prejudiced them in some way." Id.  The Court ruled that the petitioners had not demonstrated that the prosecutor's unlicensed status impacted upon the prosecution of their case. Id. at 286-87.  Accordingly, the Court held that, "[i]n the absence of any evidence that [the prosecutor] failed to meet his constitutional obligations to petitioners, the requested relief must be denied."[10] Id. at 287.

Several Minnesota Courts have addressed analogous circumstances concerning the unlicensed practice of law.  In State v. Abbott, 356 N.W.2d 677, 679 (Minn. 1984), the defendant contended that he was denied Due Process "because the attorney who prosecuted him was not properly appointed an assistant county attorney."  The Court rejected the defendant's claim, noting "that even if the prosecutor's appointment was technically defective, the defect did not prejudice defendant or deprive him of a fair trial." Id. [citation omitted].  Subsequently, in State v. Smith, 476 N.W.2d 511,

---

[10]We recognize that, in People v. Dunson, 737 N.E.2d 699, 703-06 (Ill. App. 2000), appeal denied, 744 N.E.2d 286 (Ill. 2001)[Table Decision], the Court rejected the conclusions of Carter and Munoz.  However, the Court declined to determine whether a Due Process violation had occurred in the defendant's Trial but, instead, relied upon Illinois law to adopt a per se rule that "the participation in the trial by a prosecuting assistant State's Attorney who was not licensed to practice law under the laws of Illinois" required that the Trial be deemed null and void. Id. at 706.  As a result, the Dunson Court concluded that a defendant did not need to show prejudice in order "to have a conviction and sentence vacated." Id. at 706.

512-13 (Minn. 1991), the defendant contended that his Sixth Amendment right to counsel had been violated because his counsel had been suspended from the practice of law during his Trial.  The Court first observed that, when "counsel has never been a lawyer, never been admitted to the bar, persuasive authority holds that this creates a per se Sixth Amendment violation." Id. at 513.  However, the Court noted that the question before it was whether "the per se rule should be extended to situations where counsel has been admitted to the bar but, at the time of the court proceedings, has lost licensure because of suspension or disbarment." Id.

In Smith, the Court rejected a per se rule, because "the reasons for loss of licensure can be so varied in kind and degree that imposition of a per se rule is inappropriate." Id. Lastly, the Court recognized the need to balance "the integrity of the criminal justice system," against the "reluctance to set aside a criminal conviction where guilt has been fairly established by the evidence in proceedings conducted with reasonable competence by counsel." Id. at 514.  Given those considerations, the Court concluded that the circumstances required a more flexible rule, and rejected the defendant's request for a per se Sixth Amendment violation. Id.

More recently, the Minnesota Court of Appeals addressed the effect of Graham's restricted license.  In State v. Ali, 752 N.W.2d 98, 106 (Minn.App. 2008),

- 31 -

rev. granted (Minn., September 23, 2008), the Court rejected the defendant's argument that he was entitled to a new Trial because of Graham's restricted law license. Relying on <u>State v. Abbott</u>, supra, the Court first concluded that the defendant "must show prejudice resulting from the fact that he was prosecuted by an attorney whose license to practice law was on restricted status," if he is to be entitled to a new Trial. <u>Id.</u> at 108. The Court concluded that the defendant had failed to show such prejudice. <u>Id.</u> at 109.

Further, the Court concluded that the defendant was not entitled to a new Trial because Graham was not an "imposter," who had never been a lawyer. <u>Id.</u> at 108, citing <u>State v. Smith</u>, supra at 513. The Court explained that, even though Graham's license was restricted, she had been admitted to practice law in the State of Minnesota. <u>Id.</u> The Court rejected the defendant's argument that Graham's restricted license created a <u>per se</u> rule, which required the vacation of his conviction, and the grant of a new Trial. <u>Id.</u> at 108-09. The Court noted that "the integrity of the criminal justice system and a reluctance to set aside a criminal conviction when guilt was fairly established," required a flexible approach, which "the application of a per se rule cannot afford." <u>Id.</u>, citing <u>State v. Smith</u>, supra at 514.

Lastly, the Court observed that "the practical effect of a per se rule" could not be ignored.  Id. at 109, citing Munoz v. Keane, supra at 286.  The Court explained:

> If we were to apply the standard that [the defendant] urges, every defendant who was prosecuted by Graham during the more than 20 years that her license was on restricted status would be entitled to a reversal of his conviction, regardless of whether the integrity of any defendant's trial was in any way impaired.

Id.

Therefore, since the defendant had failed to show prejudice, owing to Graham's restricted license, the Court concluded that he was not entitled to a new Trial.  Id.; see also, State v. Ramirez, 2008 WL 4470542 at *2 (Minn.App., October 7, 2008)(finding that the defendant was not entitled to a new Trial because he did not contend that he was prejudiced by Graham's conduct during his Trial), rev. granted in part, and denied in part (Minn. December 23, 2008).

Here, we agree with the Court, in Munoz v. Keane, supra, that Hamilton does not have a constitutional right to be prosecuted by a licensed attorney.  Hamilton has not offered any legal support for such a constitutional right, nor has our independent research disclosed any.[11]  In addition, even if Hamilton had a constitutional right to

---

[11]As we have noted, in People v. Dunson, 737 N.E.2d 699, 703-06 (Ill. App. 2000), appeal denied, 744 N.E.2d 286 (Ill. 2001)[Table Decision], the Court (continued...)

be prosecuted by an licensed attorney, we conclude that any alleged error was harmless, because Hamilton has not demonstrated any prejudice that arose from Graham's conduct. See, <u>Munoz v. Keane</u>, supra at 286-87; <u>State v. Ali</u>, supra at 108-09.

"'"An error is harmless if it does not affect substantial rights of the defendant, and did not influence or had only a slight influence on the verdict.'" <u>United States v. Street</u>, 548 F.3d 618, 629 (8th Cir. 2008), quoting <u>United States v. Hogan</u>, 539 F.3d 916, 922 (8th Cir. 2008), quoting, in turn, <u>United States v. Martinez</u>, 462 F.3d 903, 910 (8th Cir. 2006)[citation omitted], cert. denied, 549 U.S. 1272 (2007). Constitutional errors are divided into Trial errors, and structural errors. See, <u>Arizona v. Fulminante</u>, 499 U.S. 279, 306-310 (1991). Trial errors are "errors occurring during the course of the trial [which] may be assessed quantitatively along with the other evidence presented at trial," and "[i]t is possible, therefore, to determine if trial errors were harmless beyond a reasonable doubt." <u>Lufkins v. Leapley</u>, 965 F.2d 1477, 1480 (8th

_____

[11](...continued)
determined that the defendant's conviction should be vacated because one of the prosecutors was an unlicensed attorney. However, as we have detailed, that Court explicitly refused to address whether the unlicensed attorney's involvement in the prosecution violated the defendant's Due Process rights, and based its ruling exclusively on Illinois case law. <u>Id.</u> at 706; see also, <u>People v. Munson</u>, 150 N.E. 280 (Ill. 1925). Accordingly, <u>Dunson</u>, is not applicable here.

Cir. 1992), citing <u>Arizona v. Fulminate</u>, supra at 307-08.  "On the other hand, structural defects, such as the total deprivation of right to counsel, can never be subject to harmless error analysis because they call into question the legitimacy of the entire proceeding."  <u>Id.</u>, citing <u>Arizona v. Fulminate</u>, supra at 309-10.

Here, the "right" to be prosecuted by a licensed attorney does not qualify as structural defect.  See, <u>Munoz v. Keane</u>, supra at 286 ("[T]he 'right' asserted here -- to be prosecuted by an attorney licensed to practice law -- does not qualify as 'structural defect * * * in the trial mechanism.'").  Accordingly, we find no facial denial of Due Process, but we proceed to determine whether any of the Trial errors, which are alleged in the Petition, prejudiced Hamilton.[12]  See, <u>Petition</u>, supra at ¶12 (A)-(B).

---

[12]Although we have determined that Counts One and Two of Hamilton's Petition are procedurally defaulted, we address them here only to determine whether Hamilton was prejudiced by Graham's alleged Trial errors.

b.    Alleged Trial Errors.

1)    Graham's Closing Argument.  Hamilton first argues that Graham committed prosecutorial misconduct by speaking about race during her closing argument.  See, Petition, supra at ¶12(A).  Generally, if a timely objection to an error is made, Rule 52(a), Federal Rules of Criminal Procedure, applies and the error is analyzed under the harmless beyond a reasonable doubt standard.  See, United States v. Triplett, 195 F.3d 990, 996 (8th Cir. 1997), cert. denied, 529 U.S. 1094 (2000), citing Chapman v. California, 386 U.S. 18, 22-24, 87 (1967); see also, United States v. Olano, 507 U.S. 725, 734 (1993).  The burden then rests with the State to prove that the error was harmless beyond a reasonable doubt.  See, United States v. Triplett, supra at 996.

However, at Trial, Hamilton did not object to Graham's closing argument, and accordingly, Graham's closing argument is reviewed for plain error.[13]  See,  Rule 52(b), Federal Rules of Criminal Procedure; United States v. Two Elk, 536 F.3d 890, 900 (8th Cir. 2008), citing United States v. Sharpfish, 408 F.3d 507, 511 (8th Cir.

---

[13] "Appellate review under the plain-error doctrine, of course, is circumscribed and we exercise our power under Rule 52(b) sparingly."  United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) quoting Jones v. United States, 527 U.S. 373, 389 (1999).

2005).  "Under plain error review, this court will reverse only if there is 1) error 2) that is plain and 3) affects the defendant's substantial rights" and, "[i]n addition, the error must seriously affect 'the fairness, integrity or public reputation of judicial proceedings.'"  United States v. Robinson, 439 F.3d 777, 780 (8th Cir. 2006), quoting United States v. Olano, supra at 732.

The word "error" is to be read as error -- that is, a "[d]eviation from a legal rule is 'error' unless the rule has been waived."  United States v. Olano, supra at 732-33. "Plain" is defined as "clear or obvious."  Id. at 734. "For an error to have been plain, it must have been "clear" or "obvious" under current law."  United States v. Lachowski, 405 F.3d 696, 698 (8th Cir. 2005), citing United States v. Olano, supra at 734.  In order to "affect substantial rights," "the error must have been prejudicial:  It must have affected the outcome of the district court proceedings."  United States v. Olano, supra at 734.  The defendant bears the burden of proving plain error.  See, United States v. Pirani, supra at 550, citing United States v. Olano, supra at 734-35.

We will reverse a conviction for prosecutorial misconduct only if "(1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him a fair trial."  United States v. Ziesman, 409 F.3d 941, 953 (8th Cir. 2005), cert. denied, 546

U.S. 990 (2005), quoting <u>United States v. Beckman</u>, 222 F.3d 512, 526 (8th Cir. 2000). "If we reach the second step, we consider '(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any curative actions taken by the trial court.'" <u>United States v. Londondio</u>, 420 F.3d 777, 787 (8th Cir. 2005), quoting <u>United States v. Ziesman</u>, supra at 953, quoting, in turn, <u>United States v. Beckman</u>, supra at 526.

As a result, a Habeas petitioner "bears the heavy burden of showing that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." <u>Mack v. Casper</u>, 92 F.3d 637, 643 (8th Cir. 1996), cert. denied, 520 U.S. 1109 (1997), citing <u>Jones v. Jones</u>, 938 F.2d 838, 844-45 (8th Cir. 1991); see also, <u>Moore v. Wyrick</u>, 760 F.2d 884, 886 (8th Cir. 1985); <u>Roberts v. Bowersox</u>, 137 F.3d 1062, 1066 (8th Cir. 1998)(prosecutorial misconduct does not merit Habeas Corpus relief unless the prosecutor committed an error that effectively eliminated the defendant's Due Process right to a fair Trial), cert. denied, 525 U.S. 1073 (1999), citing <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).

Here, Hamilton objects to the following part of Graham's closing argument:

> You heard from Mr. Davenport how [Hamilton] had told him before that he was going to steal, they couldn't stop him, but because of his dealings with Mr. Davenport and

> that Mr. Davenport was black and he was black, he would respect that and he wouldn't steal when Mr. Davenport was in the store.
>
> Mr. Awoudi, as you heard, has only been here for five years, has been speaking English for five years and he didn't remember everything or understood everything the defendant was saying to him, but one thing he did understand he was saying is you're black and I'm black. Why are you stopping me? Why are you trying to stop me? You shouldn't be doing that.  That he should be allowing him to steal from his employer just because both of them are black.

Petition, supra at ¶12(A), pp. 8-9.

Although Hamilton contends that Graham's closing argument was improper, our reading of the contested portion reveals that Graham was not attempting to prejudice Hamilton by speaking of race, but instead, was merely recounting Hamilton's own words as recounted by the testimony of two (2) prosecution witnesses.  See, United States v. Eagle, 515 F.3d 794, 805 (8th Cir. 2008)(finding that the prosecutor's statements were not improper where they were "supported by evidence, or at a minimum, a reasonable inference from the evidence, adduced at trial."); cf., State v. Varner, 643 N.W.2d 298, 304 (Minn. 2002)("Above all, demeaning references to racial groups compromise the right to a fair trial by inviting jurors to view a defendant as coming from a different community than themselves."); see also, United States v.

Aleman, 548 F.3d 1158, 1167 (8th Cir. 2008)(finding that prosecutor's reference that "these guys know how to play the game" was not an improper reference to the defendant's race or nationality); Dawkins v. Artuz, 152 Fed.Appx. 45, 47 (2nd Cir. 2005)(finding that the prosecutor's references to the defendant's nationality in closing argument "were offered to provide a motive for the crime and not to suggest guilt by national association."), cert. denied sub. nom., Dawkins v. Ercole, 549 U.S. 906 (2006).   Here, we find no basis to conclude that Graham's references affected Hamilton's substantial rights, or affected the outcome of the proceedings. Accordingly, Hamilton has failed to demonstrate plain error, with respect to Graham's closing argument.

2)   Graham's Peremptory Strike of a Juror.   Next, Hamilton contends that Graham improperly struck a juror from the Jury pool, because of that juror's race.   Of course, "racial discrimination in jury selection offends the Equal Protection Clause" of the Fourteenth Amendment.   Batson v. Kentucky, 476 U.S. 79, 85 (1986), citing Strauder v. West Virginia, 100 U.S. 303 (1880).   While a Defendant has "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria[,]" id. at 85-86 [citations omitted], the  "defendant has no right to a 'petit jury composed in whole or in part of persons of his own race.'" Id.

at 85, quoting <u>Strauder v. West Virginia</u>, supra at 305.   Instead, "[t]he Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race." <u>Id.</u> at 86, citing <u>Strauder v. West Virginia</u>, supra at 305.

"A defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." <u>Id.</u> at 96.  To make a prima facie case, the defendant must show that he or she belongs to cognizable racial group, and "that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." <u>Id.</u>, citing <u>Castaneda v. Partida</u>, 430 U.S. 482, 494 (1977).   The defendant must also "show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." <u>Id.</u>

After the defendant has made a prima facie showing, the burden shifts to the State to produce a race neutral reason for challenging that juror. <u>Id.</u>  A race neutral reason means an explanation that is based upon something other than the person's race.  See, <u>Hernandez v. New York</u>, 500 U.S. 352, 360 (1991).  During the second step of the analysis, the State's reason need not be either persuasive or even plausible.

- 41 -

See, <u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995).  As long as the State's explanation displays nondiscriminatory intent, the reason offered will be considered race neutral. <u>Id.</u>

At the third step, the Trial Court must decide whether the defendant has proved purposeful discrimination.  See, <u>Purkett v. Elem</u>, supra at 768 ("It is not until the third step that the persuasiveness of the justification becomes relevant -- the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination."); <u>Batson v. Kentucky</u>, supra at 98 ("The trial court will then have the duty to determine if the defendant has established purposeful discrimination").  At that stage, the ultimate burden of persuasion remains with the opponent of the strike.  See, <u>Purkett v. Elem</u>, supra at 768, citing <u>St. Mary's Honor Center v. Hicks,</u> 509 U.S. 502, 511 (1993); see also, <u>United States v. Bolden</u>, 543 F.3d 614 (8th Cir. 2008).

In deciding if there is discrimination, a Court may find that the State's implausible or fantastic reasons for striking were simply a pretext for discrimination.  See, <u>Purkett v. Elem</u>, supra at 768. However, allowing a Court to disbelieve the State's implausible reason is quite different from "saying that a trial judge must terminate the inquiry at step two when the race-neutral reason is silly or superstitious." <u>Id.</u>  When

determining if the State's race-neutral reason is pretextual, the Court may have to look beyond the case at hand. See, <u>Miller-el v. Dretke</u>, 545 U.S. 231, 240 (2005)("Some stated reasons are false, and although some false reasons are shown up within the four corners of a given case, sometimes a court may not be sure unless it looks beyond the case at hand.").   "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise - similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at the third step."   <u>Id.</u> [citation omitted].   Evidence that the State asked different voir dire questions of minority and nonminority venirepersons can also be probative evidence of the State's discriminatory intent.   <u>Id.</u> at 256-66.

Hamilton contends that Graham "disqualified at least one black prospective juror," because of that juror's race.[14]   See, <u>Petition</u>, supra at 4, and 9.   Nonetheless, we find that Hamilton has failed to satisfy his burden to demonstrate other facts, or circumstances, to raise an inference that Graham struck the Juror on account of the Juror's race.   Without any additional facts or circumstances, we are unable to ascertain whether Graham removed the Juror for improper reasons.   Accordingly, Hamilton has

---

[14]In his response, Hamilton contends that Graham struck two (2) prospective black jurors because of their race.   See, <u>Petitioner's Response</u>, supra at 17.

failed to demonstrate a prima facie case.  See, <u>United States v. Wolk</u>, 337 F.3d 997, 1007 (8th Cir. 2003)("The mere recitation of the fact that black jurors were struck from the jury cannot alone establish a prima facie case."), citing <u>United States v. Matha</u>, 915 F.2d 1220, 1222 (8th Cir. 1990)("This Court has held that the movant cannot carry the burden of establishing a prima facie case with numbers alone."), and <u>United States v. Dawn</u>, 897 F.2d 1444, 1448 (8th Cir. 1990)("[A] defendant who requests a prima facie finding of purposeful discrimination is obligated to develop a record, beyond numbers, in support of the asserted violation."), cert. denied, 489 U.S. 960 (1990); <u>United States v. Moore</u>, 895 F.2d 484, 485 (8th Cir. 1990)( "Thus it is important that the defendant come forward with facts, not just numbers alone, when asking the district court to find a prima facie case.").  Accordingly, Hamilton has failed to demonstrate that his Equal Protection rights were violated.

Since we have determined that both Trial errors, as alleged by Hamilton, were harmless, Hamilton has failed to demonstrate that Graham's actions, or that her restricted law license, resulted in any prejudice, and therefore, we find no support for Hamilton's Due Process claim, and accordingly, we recommend that his Petition be denied, with respect to Graham's law license.

   c. <u>De Facto Officer Doctrine</u>.  Alternatively, the Respondent

contends that Graham's actions are valid under the de facto officer doctrine.

   1) <u>Standard of Review</u>.  The de facto officer doctrine

"'confers validity upon acts performed by a person acting under the color of official

title even though it is later discovered that the legality of that person's appointment

or election to office is deficient.'"  <u>Nguyen v. United States</u>, 539 U.S. 69, 77 (2003),

quoting <u>Ryder v. United States</u>, 515 U.S. 177, 180 (1995).  "The de facto doctrine

springs from the fear of the chaos that would result from multiple and repetitious suits

challenging every action taken by every official whose claim to office could be open

to question, and seeks to protect the public by insuring the orderly functioning of the

government despite technical defects in title to office."  <u>Ryder v. United States</u>, supra

at 180 [quotations and citations omitted]; see also, <u>Hussey v. Smith</u>, 99 U.S. 20, 24

(1898)("The acts of such officers are held to be valid because the public good requires

it," and "[a] different rule would be a source of serious and lasting evils."); <u>Equal</u>

<u>Employment Opportunity Comm'n v. Sears, Roebuck and Co.</u>, 650 F.2d 14, 17 (2nd

Cir. 1981)("The de facto officer doctrine was developed to protect the public from the

chaos and uncertainty that would ensue if actions taken by individuals apparently

occupying government offices could later be invalidated by exposing defects in the

officials' titles."). "The doctrine has generally been applied to individuals who are in possession of an office, are performing the duties of the office, and who maintain an appearance of right to the office." Equal Employment Opportunity Comm'n v. Sears, Roebuck and Co., supra at 17, citing Waite v. Santa Cruz, 184 U.S. 302, 323 (1902).

        2)     Legal Analysis. Here, the Respondent does not claim that there was a defect in Graham's appointment as a prosecutor. Instead, the Respondent asserts that the de facto officer doctrine extends beyond mere technical, administrative, or elective defects, and provides validity to Graham's actions regardless of the status of her law license. We agree.

In Parker v. United States, 2006 WL 2597770 at *13-14 (E.D. Ark., September 8, 2006), the defendant claimed that he was entitled to a new Trial because the Assistant United States Attorney ("AUSA"), who prosecuted his case, was suspended after the completion of his Trial for failure to have a law license in good standing.[15] The Court rejected the defendant's claim, and concluded that the AUSA's actions fell under the de facto officer doctrine. Id. at *14. The Court noted that the AUSA

---

[15]The AUSA had failed to pay her law licensure fees since March of 1989. See, Parker v. United States, 2006 WL 2597770 at *14 (E.D. Ark. September 8, 2006).

"operated as a de facto officer during her course of employment with the United States Attorney's Office" and, because of her appointment by the Attorney General of the United States, she "operated under color of authority * * * of her appointment and that she did not have a valid license at the time does not invalidate any of her actions." Id.

In United States v. Deaton, 2005 WL 1922877 at *3 (E.D. Ark., August 9, 2005), the defendant filed a motion to vacate his sentence because the AUSA who prosecuted him did not have a license to practice law when she presented evidence to the Grand Jury, and during his two (2) Trials.[16]  The Court rejected the defendant's claim, and noted that "[t]he Arkansas courts have found that prosecutors who did not have actual authority to prosecute a defendant were acting as a 'de facto official' and the defendant could not collaterally attack the prosecutor's lack of authority to prosecute." Id.  The Court noted that the prosecutor operated under the color of authority because of her appointment by the Attorney General of the United States, and accordingly, the fact "that she did not have a valid license at the time does not invalidate any of her actions." Id.  The Court further noted that the defendant could

---

[16]The AUSA, who was the subject of the defendant's challenge in Parker v. United States, 2006 WL 2597770 at *13-14 (E.D. Ark., September 8, 2006), was the AUSA involved in this action as well.

not "establish any prejudice resulting from [the prosecutor's] actions," and accordingly, his claim was dismissed.

Numerous State Courts have also held that the de facto officer doctrine validates the actions of an unlicensed prosecutor.  See, <u>Anderson v. State</u>, 699 N.E.2d 257, 259-60 (Ind. 1998)(finding that de facto officer doctrine validated an unlicensed prosecutor's actions because the defendant failed to demonstrate prejudice from the prosecutor's involvement); <u>State v. Escalante</u>, 458 N.W.2d 787, 790-91 (S.D. 1990) (applying the de facto officer doctrine where the prosecuting attorney signed the charging documents a few days prior to the issuance of his law license); <u>People v. Pizzaro</u>, 552 N.Y.S.2d 816, 816-19 (N.Y. Sup. 1990)(refusing to vacate the defendant's conviction where the prosecutor "had the attributes of a de facto public officer" even though the prosecutor was not a licensed attorney).

Here, we conclude that Graham meets the requirements of the de facto officer doctrine, as she was appointed as an Assistant Hennepin County Attorney in 1983, and she prosecuted felony crimes, under that title, until 2007.  See, <u>Respondent's Memorandum</u>, supra at 17-18.  During her tenure, Graham held herself out as a licensed member of the Minnesota bar.  <u>Id.</u> at 18.  However, unbeknownst to Hennepin County, the State Court, and the public at large, Graham had been

conducting her duties, for over twenty (20) years, with a restricted law license.  See, In re Disciplinary Action Against Graham, supra at 19.

Although Graham's misconduct should not be diminished, we find that the performance of her duties, as pertinent to Hamilton's case, are entitled to protection, pursuant to the de facto officer doctrine.  At all times, Graham acted under the color of authority, through her appointment by the Hennepin County Attorney, to prosecute felonies, and accordingly, the fact that her license was on restricted status does not invalidate any of her actions.  See, Parker v. United States, supra at *14; United States v. Deaton, supra at *3.  Furthermore, as we have already noted, Hamilton has failed to demonstrate any prejudice arising directly out of Graham's actions in his case.  See, United States v. Deaton, supra at *3.

In the absence of any prejudice, we find that the de facto officer doctrine is applicable to Graham, and accordingly, we recommend that Hamilton's claim be dismissed, on this alternative basis, as well.

3.    Ineffective Assistance of Counsel.

a.    Standard of Review.  "To be eligible for habeas relief based on ineffective assistance of counsel [the Petitioner] must meet the two part test announced in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80

- 49 -

L.Ed.2d 674 (1984)." <u>Winfield v. Roper</u>, 460 F.3d 1026, 1033 (8th Cir. 2007), cert.

denied, --- U.S. ---, 127 S.Ct. 2256 (2007); <u>Smith v. United States</u>, 182 F.3d 1023,

1025 (8th Cir. 1999).  Under that test, the Petitioner must first show "that counsel's

performance fell below an objective standard of reasonableness," and "then show that

the deficient performance prejudiced his defense." <u>Winfield v. Roper</u>, supra at 1033,

citing <u>Strickland v. Washington</u>, supra at 687-88; see also, <u>Smith v. United States</u>,

supra at 1025-26; <u>Siers v. Weber</u>, supra at 974.

"Judicial scrutiny of counsel's performance is highly deferential, indulging a

strong presumption that counsel's conduct falls within the wide range of reasonable

professional judgment." <u>Bucklew v. Luebbers</u>, 436 F.3d 1010, 1016 (8th Cir. 2006),

cert. denied, 549 U.S. 1079 (2006), citing <u>Strickland v. Washington</u>, supra at 689.  In

order to show prejudice, the Petitioner must prove "a reasonable probability that, but

for counsel's ineffectiveness, the result would have been more favorable to [the

Petitioner.]" <u>Winfield v. Roper</u>, supra at 1033, citing <u>Strickland v. Washington</u>, supra

at 690-91; see also, <u>Siers v. Weber</u>, supra at 974.  The Court must look at the evidence

before the Judge, or Jury, as a whole, in order to determine the effect of any alleged

attorney errors.  See, <u>Strickland v. Washington</u>, supra at 695.  The ultimate focus of

the inquiry is fundamental fairness in the proceeding, with relief granted only where there has been a breakdown in the adversarial process.  Id. at 696.

Finally,"there is no reason for a court deciding an ineffective assistance claim to * * * address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland v. Washington, supra at 697; see also, Morales v. Ault, 476 F.3d 545, 551 n. 4 (8th Cir. 2007)("Because we conclude that the state courts' application of Strickland's prejudice prong was not unreasonable, however, we need not address its application of Strickland's performance prong"), citing Blankenship v. United States, 159 F.3d 336, 338 (8th Cir.1998); Davis v. Norris, 423 F.3d 868, 877 (8th Cir. 2005).

b.   Legal Analysis.  Hamilton argues that he was deprived of his Sixth Amendment right to the effective assistance of counsel because his counsel failed to present post-arrest hospital photographs which showed a fractured tooth and ear injuries.[17]  See, Petition, supra at ¶12(D), p. 10.  We disagree.

---

[17]The Respondent also contends that Hamilton has raised a claim for ineffective assistance of appellate counsel.  See, Respondent's Memorandum, supra at 23-24. However, upon our review of Hamilton's Petition, we find no allegation of ineffective assistance of appellate counsel.  We acknowledge that Hamilton makes such a claim in his Response but he was merely responding to the Respondent's allegation.  See, Petitioner's Response, supra at 6.  Accordingly, we do not address that claim further.
(continued...)

As a preliminary matter, in applying the Strickland test, the Minnesota Court of Appeals invoked case law that is consistent with clearly established Federal law when analyzing Hamilton's claim of ineffective assistance of counsel.  See, State v. Hamilton, supra at *4.  Therefore, our inquiry is limited to whether the State Court's application of the Strickland test, to Hamilton's claims, was unreasonable.  See, Honeycutt v. Roper, 426 F.3d 957, 960 (8th Cir. 2005)(noting that, when a State Court properly identifies the Strickland test as the applicable standard for ineffective assistance of counsel claims, the Federal Court's review is limited to the reasonable application of the law to the facts), cert. denied, 547 U.S. 1180 (2006); Title 28 U.S.C. §2254(d)(1).

In his direct appeal to the Minnesota Court of Appeals, Hamilton argued that he had received ineffective assistance of counsel because his attorney had failed to present the hospital photographs to the Jury.[18]  See, State v. Hamilton, supra at *4.

---

[17](...continued)
We further note that Hamilton failed to challenge his counsel's decision not to call a medical expert in his direct appeals.  See, Petition, supra at 10; Petitioner's Response, supra at 4-6.  Since we have determined that such a claim is procedurally defaulted, we also do not address it further.

[18]Hamilton also contended that he had received ineffective assistance of counsel because his counsel failed to subpoena a witness.  See, State v. Hamilton, 2007 WL
(continued...)

The Court rejected Hamilton's claim, noting that "[m]atters of trial tactics, including calling the witnesses and the presentation of information to the jury 'represent an attorney's decision regarding trial tactics which lie within the proper discretion of trial counsel and will not be reviewed later for competence.'"   Id., quoting State v. Voorhees, 596 N.W.2d 241, 255 (Minn. 1999).

We agree that a counsel's Trial strategy is entitled to great deference.  See, Winfield v. Roper, supra at 1041 ("Tactical decisions made after a thorough investigation are 'virtually unchallengeable' on appeal."), citing Strickland v. Washington, supra at 690-91; Johnson v. United States, 278 F.3d 839, 842 (8th Cir. 2002)("When determining whether counsel's representation was deficient, 'a court must avoid second-guessing trial strategy.'"),  quoting Sanders v. Trickey, 875 F.2d 205, 207 (8th Cir. 1989), cert. denied, 493 U.S. 898 (1989); Boyd v. Minnesota, 274 F.3d 497, 502 (8th Cir. 2001)("Courts must begin by presuming trial counsel was effective," and "[m]oreover, strategic choices of trial counsel are entitled to great deference."), citing Strickland v. Washington, supra at 689.   Furthermore, "[d]ecisions regarding what evidence should be submitted to prove a defense theory

---

[18](...continued)
3076995 at *4.  However, Hamilton has not raised that claim in his current Petition, and therefore, we do not address it further.

are committed to the sound discretion of trial counsel." Underdahl v. Carlson, 381 F.3d 740, 743 (8th Cir. 2004); see also, Fretwell v. Norris, 133 F.3d 621, 628 (8th Cir. 1998), cert. denied, 525 U.S. 846 (1998)("Decisions to introduce only some of the available evidence on a point do not, unless 'deficient in some significant respect,' fail the first prong of Strickland."), quoting, Smith v. Armontrout. 888 F.2d 530, 535 (8th Cir. 1989).

Moreover, the Minnesota Court of Appeals' finding as to the Trial strategy of Hamilton's counsel -- i.e., that counsel made a strategic choice not to introduce the hospital photographs -- is entitled to a presumption of correctness.   See, Title 28 U.S.C. §2254(e)(1); Lupien v. Clarke, supra at 618; see also, Ellefson v. Hopkins, 5 F.3d 1149, 1151 (8th Cir. 1993)(State Court finding of Trial strategy is entitled to presumption of correctness, and Federal Habeas Court will not second-guess Trial strategy).  Hamilton's photographs confirm that he suffered  a tooth fracture and ear injuries, but they do not disprove the prosecution's theory that Hamilton attempted to take groceries from the Rainbow store, and that he physically threatened, and fought with, store employees when they attempted to prevent his escape.  Furthermore, the photographs may have only served to highlight the intensity of the struggle -- that is, unnecessarily emphasized that Hamilton was adamant in completing his alleged act

of theft -- rather than to support Hamilton's claimed status as a victim. Quintessentially, "'[t]his is the kind of judgment, right or wrong, that trial lawyers regularly make, and we are not convinced that it was incorrect.'" McCoy v. Lockhart, 980 F.2d 1162, 1164 (8th Cir. 1992), cert. denied, 509 U.S. 930 (1993), quoting Simmons v. Lockhart, 915 F.2d 372, 378 (8th Cir. 1990). Accordingly, Hamilton has failed to show that his counsel's performance was constitutionally deficient.

Since we do not find that Hamilton's counsel performed deficiently, we need not decide whether Hamilton can prove a reasonable probability of prejudice. See, Strickland v. Washington, supra at 697; Morales v. Ault, supra at 551 n. 4; Davis v. Norris, supra at 877; Blankenship v. United States, supra at 338. However, we note that Hamilton has also failed to show any reasonable probability that he would have been acquitted, or even convicted of a lesser crime, if his counsel had presented the hospital photographs to the Jury. Accordingly, in our considered view, the Minnesota Court of Appeals was not unreasonable in applying the Strickland test to the performance of Hamilton's counsel, and we recommend that this claim be dismissed.

In sum, finding no merit to any of Hamilton's claims, we recommend that his Petition be denied.

NOW, THEREFORE, It is --

- 55 -

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be denied.

Dated:  March 17, 2009                    *s/Raymond L. Erickson*
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than April

3, 2009,** a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in

the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than April 3, 2009,** unless all interested parties

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.